IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

YORK INVESTMENTS, LLC and
TRICOM, INC.,

    Plaintiffs,

v.

                              Case No. 2:25-cv-00140-MIS-JHR

BORDER PARTS GROUP, INC.,
KEITH BOYD, and BORDER
SERVICE GROUP, INC.,

    Defendants.

**ORDER DENYING PLAINTIFF YORK INVESTMENT, LLC'S MOTION FOR SUMMARY JUDGMENT AS TO ALL DEFENDANTS FOR STIPULATED REMEDY OF ENTRY OF CONFESSION OF JUDGMENT**

THIS MATTER is before the Court on Plaintiff York Investment, LLC's Motion for Summary Judgment as to All Defendants for Stipulated Remedy of Entry of Confession of Judgment, ECF No. 11, and Memorandum of Law in support thereof ("Motion"), ECF No. 12, filed March 13, 2025.[1] Defendants Border Parts Group, Inc., Keith Boyd ("Mr. Boyd"), and Border Service Group, Inc. (collectively, "Defendants") filed an Amended Response on March 31, 2025 ("Response"), ECF No. 17, to which Plaintiffs filed a Reply on April 10, 2025 ("Reply"), ECF No. 20.  Upon review of the Parties' submissions, the record, and the relevant law, the Court will **DENY** the Motion.

---

[1] Although the Motion was filed by Plaintiff York Investments, LLC, the Court construes the Motion as being filed by both Plaintiffs as they are both represented by the same attorney, they were both Parties to the underlying Settlement Agreement, and the Stipulated Confession of Judgment they seek to enter is payable to them both.  See Stipulated Confession of Judgment at 3, ECF No. 12 at 16.  Additionally, the Reply brief was filed by both Plaintiffs.  See ECF No. 20 at 1.  Accordingly, the Court will refer to them collectively as "Plaintiffs" in this Order.

I. **Facts**[2]

On January 18, 2024, the Parties entered into a Settlement Agreement and Mutual Release ("Settlement Agreement") to resolve a separate civil action in this Court, Case No. 2:22-cv-00659-WJ-GJF.[3]  Pls.' Facts ¶ 5.  As part of the Settlement Agreement, Mr. Boyd, individually and on behalf of all Defendants, signed a Stipulated Confession of Judgment[4] (which the Parties referred to as a "Pocket Judgment" in the Settlement Agreement) on January 29, 2024, stipulating as to its filing as the remedy Plaintiffs could seek in the event Defendants defaulted on their payments and failed to cure the default within the specified cure period.  Id. ¶ 6.

It appears undisputed that Defendants failed to make a payment required by the Settlement Agreement on January 1, 2025.  See id. ¶ 7; Defs.' Resp. Facts ¶ 1.  However, the Parties dispute whether Plaintiffs thereafter provided notice of default and demanded payment from Defendants in accordance with the Settlement Agreement.  See Pls.' Facts ¶ 7; Defs.' Resp. Facts ¶ 1; Defs.' Facts ¶¶ A, B.  The Parties also dispute whether Defendants failed to timely cure the default and make payment.  Pls.' Facts ¶ 8; Defs.' Resp. Facts ¶ 2; Defs.' Facts ¶ C.

II. **Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure allows a court to grant summary judgment when the evidence submitted by the parties establishes that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  "[A] party seeking summary

---

[2] The following facts are gleaned from Plaintiffs' Statement of Undisputed Material Facts ("Pls.' Facts"), Mot. at 3-5, ECF No. 12, Defendant's Response thereto ("Defs.' Resp. Facts),"  Resp. at 4, ECF No. 17, and Defendants' additional facts ("Defs.' Facts"), id. at 5.  All facts are undisputed unless otherwise noted.

[3] Plaintiff's Statement of Undisputed Material Facts misidentifies the case number as 2:22-cv-00659-MIS-GJF.

[4] A confession of judgment is a statutorily prescribed remedy.  See N.M. Stat. Ann. 39-1-9 to 39-1-20.

2

judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the nonmovant is required to point the court to record evidence of material facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986). A fact is "material" if under the substantive law it is essential to the proper disposition of the claim. Id. at 248. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).

The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment. See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 649 (10th Cir. 1988). Rather, the nonmovant must "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [their] case in order to survive summary judgment." Johnson v. Mullin, 422 F.3d 1184, 1187 (10th Cir. 2005) (quoting McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998)).

It is not the court's role to weigh the evidence or assess the credibility of witnesses in ruling on a motion for summary judgment. See Daniels v. United Parcel Serv., Inc., 701 F.3d 620, 627 (10th Cir. 2012), abrogated on other grounds by Muldrow v. City of St. Louis, 601 U.S. 346, 355-56 (2024). Rather, the court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999); see also Garrison v. Gambro, Inc., 428 F.3d 933, 935 (10th Cir. 2005). However, summary judgment may nevertheless

be granted where "the evidence is merely colorable, or is not significantly probative." Liberty Lobby, 477 U.S. at 249-50 (internal citations omitted).

### III.    Discussion

Plaintiffs argue that the only condition to entry of the Stipulated Confession of Judgment was fulfilled when Defendants defaulted and failed to timely cure the default after Plaintiffs provided notice of default. See Mot. at 5-6, ECF No. 12. In this regard, they provide evidence that on January 2, 2025, Plaintiffs' counsel's legal assistant, Sylvia Garcia ("Ms. Garcia"), sent a notice of default to Mr. Boyd and his attorney via email. ECF No. 12 at 70-71. Plaintiffs argue that they "should be permitted to simply file the Confession of Judgment with the Court for entry by the clerk, without filing an action, and without asking for its entry in a summary judgment posture[,]" id. at 7 (citing N.M. Stat. Ann. § 39-1-9), but "out of an abundance of caution, move[] for entry under this court's supervision instead of asking for its entry by the Clerk of Court[,]" id. Plaintiffs state that Defendants failed to timely pay each of their first twelve installments under the Settlement Agreement, but timely cured the default the first eleven instances after Plaintiffs' counsel sent Defendants a notice of default. Id. at 8. Plaintiffs assert that Defendants failed to cure the twelfth default, even though "[n]otice of default was sent in the same manner and form and to the same addresses as in each of the prior instances of default." Id. Plaintiffs filed the affidavit of Plaintiffs' principal, Jim York, which attests to these facts. ECF No. 12 at 11-13. Mr. York attached to his affidavit all twelve notices of default sent to Mr. Boyd, which were attached to emails sent from Ms. Garcia to Mr. Boyd and his attorney. Id. at 12, 22-71

Defendants argue that they did not receive notice of default in January 2025. Resp. at 5-6, ECF No. 17. In support, they filed the affidavit of Mr. Boyd who asserts that he did not receive notice of an unpaid amount for January 2025 via email or otherwise. Aff. of Keith Boyd ("Boyd

4

Aff.") ¶ 5, ECF No. 17 at 10. He further states that he asked his attorney whether his office received an email related to the January 2025 default, and his attorney "confirmed no such email was received." Id. ¶ 7. Mr. Boyd states that he had Border Parts Group's information technology ("IT") consultant search for the email Plaintiffs allegedly sent him, "and none was found." Id. ¶ 6. Defendants filed the affidavit of the IT consultant, Hugo Martinez, who avers that he searched for the email containing the notice of default Plaintiffs allegedly sent Mr. Boyd, and "[n]o such email was located in the email server and one could not otherwise be located." Aff. of Hugo Martinez ("Martinez Aff.") ¶ 3, ECF No. 17 at 12. Therefore, Defendants argue that Plaintiffs are not entitled to enforcement of the Stipulated Confession of Judgment. Resp. at 6, ECF No. 17.

In their Reply, Plaintiffs argue that they do not need to prove that Defendants received the notice "as long as they prove they sent the Notice of Default in the authorized manner and to the right address. Any other burden makes Plaintiffs the guarantor of Defendants' email system." ECF No. 20 at 4. Regardless, Plaintiffs filed the affidavit of IT consultant Kevin Springler who asserts that the notice of default sent to Defendants on January 2, 2025 arrived at Defendants' email server on January 2, 2025. Id.; see also Aff. of Kevin Springler ("Springler Aff."), ECF No. 20 at 19-20. Plaintiffs argue that a reasonable factfinder could not believe Mr. Boyd's assertion that he never received the emailed notice of default considering: (1) Mr. Boyd is a sophisticated businessman who specifically negotiated for his twelve installment payments to conclude on January 1, 2025; (2) Defendants received a notice of default each month in the eleven preceding months because they defaulted on payment each month; (3) every notice of default was sent in the exact same manner to the exact same addresses, and Plaintiffs never received a notice of non-delivery (and, in fact, Mr. Boyd acknowledged receipt five of the twelve times); (4) Mr. Boyd personally authorized email as a means of notice and instructed Plaintiffs to use his email address; (5) Defendants

5

received and acted upon the eleven prior notices of default sent to the identical address used by Plaintiffs for the twelfth notice of default; (6) Plaintiffs' counsel, who is copied on every transmission, received the twelfth notice of default; and (7) according to Mr. Springler, the fact that the twelfth email is in Ms. Garcia's "sent" folder "proves that it was delivered to Mr. Boyd's server." Reply at 5-8. Plaintiffs argue that there is a presumption that an email is delivered when sent to the correct email address, and that Defendants failed to rebut that presumption. Id. at 9 (citing Am. Boat Co., Inc. v. Unknown Sunken Barge, 567 F.3d 348, 353 (8th Cir. 2009); Kruskal v. Martinez, No. CIV 16-1075 JB/SCY, 2020 WL 6888151 (D.N.M. Nov. 24, 2020); Cantrell v. Albasi, 11-CV-00044 KG/SMV, 2013 WL 12328911 (D.N.M. Oct. 30, 2013)). They argue that the assertion that Mr. Boyd's IT consultant cannot now "locate" the twelfth notice of default on Mr. Boyd's email server is insufficient to overcome the presumption of delivery. Id. at 9-10. Defendants also argue that under the terms of the Settlement Agreement, the date of notice is the date "sent," and therefore notice is deemed received on the date sent. Id. at 10; see also Settlement Agreement at 4, ECF No. 20 at 15.

"The general rules of contract interpretation under state law apply to settlement agreements." Flying J Inc. v. Comdata Network, Inc., 405 F.3d 821, 831 (10th Cir. 2005).

Here, the Settlement Agreement provides that Mr. Boyd was required to pay the settlement amount of $100,000, plus interest at 6% per annum, in monthly installments. Settlement Agreement at 2-3, ECF No. 20 at 13-14. Mr. Boyd was required to make each installment payment to Jim York on the "first day of each month, until paid in full." Id. at 2, ECF No. 20 at 13.

> In the event of default, York shall provide written notice of default to Boyd and his counsel at the address and in the manner stated below, notifying Boyd and Border that failure to cure the default within ten (10) days of the date the notice is received shall result in the filing of the agreed Pocket Judgment and acceleration of the entire Default Settlement Amount [of $150,000 plus 8.75% interest per annum].

6

Id. at 3, ECF No. 20 at 14.  The Settlement Agreement provides both an email address and a physical address for Mr. Boyd and states:

> Notice may be made by email, with confirmation by email to Boyd's counsel . . . .  The date of notice by email shall be the date sent.  If notice is mailed, it shall be mailed by certified mail, return receipt requested, but it shall be deemed delivered no later than three days after the date of mailing.

Id. at 4, ECF No. 20 at 15.  The Settlement Agreement "is governed by the law of the State of New Mexico . . . ." Id. at 5, ECF No. 20 at 16.

The Court finds that a genuine issue of material fact precludes summary judgment in favor of Plaintiffs.  The Settlement Agreement unambiguously states that Plaintiffs are entitled to the filing of the Pocket Judgment if Mr. Boyd fails to cure default within ten days of receiving notice of default.  Settlement Agreement at 3, ECF No. 20 at 14 ("In the event of default, York shall provide written notice of default to Boyd and his counsel at the address and in the manner stated below, notifying Boyd and Border that failure to cure the default within ten (10) days of the date the notice is received shall result in the filing of the agreed Pocket Judgment and acceleration of the entire Default Settlement Amount." (emphasis added)).  However, Defendants have presented evidence from which a reasonable factfinder could conclude that Mr. Boyd did not receive the notice of default that Ms. Garcia emailed him on January 2, 2025.  Specifically, Mr. Boyd filed an affidavit denying that Plaintiffs sent him notice of default and explicitly stating: "I did not receive notice of an unpaid amount for January 2025.  I did not receive an email or certified mail related to any such default." Boyd Aff. ¶ 5, ECF No. 17 at 10.  He further states that he asked his attorney if his office received an email related to the January 2025 default and his attorney "confirmed no such email was received." Id. ¶ 7.  Mr. Boyd further states that he had an IT consultant "search for this alleged email and none was found." Id. ¶ 6.  Mr. Boyd's IT consultant also filed an affidavit

7

stating that he searched for an email sent by Plaintiffs' counsel or his assistant in January 2025, and "[n]o such email was located in the email server and one could not otherwise be located." Martinez Aff. ¶ 3, ECF No. 17 at 12.  The Court rejects Plaintiffs' argument that Defendants' evidence is insufficient as a matter of law to survive summary judgment: "The law is clear that summary judgment may be defeated by evidence in the form of affidavits."  New Mexico ex rel. King v. CreditArbitrators, LLC, Civ. No. 12-16 MV/RHS, 2014 WL 12581756, at *7 n.1 (D.N.M. Mar. 26, 2014).

Plaintiffs provide evidence that the January 2, 2025 email containing the notice of default was, in fact, received by Mr. Boyd's email server.  See Springler Aff. ¶¶ 3-5, ECF No. 20 at 19-20 (stating that an email from Ms. Garcia to Mr. Boyd and his attorney was located in Ms. Garcia's "sent" folder, indicating "that the mail server that handles Sylvia's account successfully connected to the recipients' email server(s) and successfully delivered the message to that/those server(s)"). But at the summary judgment stage, the Court may not weigh the evidence or assess the credibility of witnesses, see Daniels, 701 F.3d at 627, and must resolve all doubts against the movant, construe all admissible evidence in the light most favorable to the nonmovant, and draw all reasonable inferences in favor of the nonmovant, see Hunt, 526 U.S. at 551-52; Garrison, 428 F.3d at 935. Doing so requires the Court to find a genuine issue of material fact exists as to whether Mr. Boyd and his attorney received the January 2, 2025 email containing the notice of default.

Plaintiffs' argument that Defendants failed to rebut the presumption that an email is delivered when sent to the correct address fails for two reasons.  First, the cases that they cite do not establish a general presumption that all emails are deemed delivered when sent to the correct email address.  Rather, those cases stand for the principle that electronically-generated notices sent by a federal court's electronic filing system may be presumed delivered when emailed to the email

address a litigant has on file with the court. See Am. Boat Co., 567 F.3d at 352-53 ("[T]he district court was permitted to apply a presumption of delivery and receipt of emails sent by the court's CM/ECF system."); Kruskal, 2020 WL 6888151, at *2 (finding that the plaintiff received notice of the court's dismissal order where the court's systems engineer "reviewed the Court's Case E-Mail Notification Tracking System archives, which show that the destination server successfully received the emails . . . ."); Cantrell, 2013 WL 12328911, at *3 ("There is a presumption of delivery and receipt of emails sent by the CM/ECF system in the absence of reliable evidence to the contrary."). Second, even if such a presumption applied to all emails, Defendants have presented evidence that Mr. Boyd did not, in fact, receive the email. See Cantrell, 2013 WL 12328911, at *3 ("There is a presumption of delivery and receipt of emails sent by the CM/ECF system in the absence of reliable evidence to the contrary." (emphasis added)). The Court finds the evidence is sufficient to rebut any presumption of delivery and receipt of the notice at the summary judgment stage.

Nevertheless, Plaintiffs argue that whether Mr. Boyd actually received the email is irrelevant because, pursuant to the Settlement Agreement, a notice of default sent by email is deemed received on the date it is sent. Reply at 4, ECF No. 20. In this regard, they point to the provision of the Settlement Agreement that states: "The date of notice by email shall be the date sent." Id. The Court finds that this provision of the Settlement Agreement is ambiguous.

Under New Mexico law, "[w]hether contractual terms are ambiguous is a question of law" properly decided by the court. ConocoPhillips Co. v. Lyons, 299 P.3d 844, 849 (N.M. 2012). See also Levenson v. Mobley, 744 P.2d 174, 176 (N.M. 1987). Courts are to deduce the "purpose, meaning and intent of the parties to a contract" from "the language employed by them[,]" and "where such language is not ambiguous, it is conclusive." ConocoPhillips, 299 P.3d at 852

9

(internal quotation marks omitted) (quoting Cont'l Potash, Inc. v. Freeport-McMoran, Inc., 858 P.2d 66, 80 (N.M. 1993)). "A contract term may be ambiguous if it is 'reasonably and fairly susceptible [to] different constructions.'" Id. (quoting Mark V, Inc. v. Mellekas, 845 P.2d 1232, 1235 (N.M. 1993)) (alteration in original). If a court determines that a term is ambiguous, the interpretation of the term is a question of fact for the jury (or the judge in the case of a bench trial). Id. at 849. New Mexico courts may consider extrinsic evidence in making the "threshold" determination as to ambiguity. Id. Permissible collateral evidence includes that of "the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance." C.R. Anthony Co. v. Loretto Mall Partners, 817 P.2d 238, 242-43 (N.M. 1991).

The Settlement Agreement's provision stating "The date of notice by email shall be the date sent" is reasonably and fairly susceptible to different constructions. On one hand, it could be interpreted to mean that notice of default by email is deemed received on the date the email is sent, as Plaintiffs argue. On the other hand, it could be interpreted to mean that the ten-day cure window begins on the date the email is sent regardless of when the recipient opens the email; however, this interpretation assumes that the recipient actually received the email containing the notice of default.

The Court notes that if the Parties intended for a notice of default delivered by email to be deemed received the date the email was sent, they could have said that in the Settlement Agreement. In fact, in the very next sentence the Parties used similar language: "If notice is mailed, it shall be mailed by certified mail, return receipt requested, but it shall be deemed delivered no later than three days after the date of mailing." Settlement Agreement at 4, ECF No. 20 at 15. Additionally, the January 2, 2025 notice of default states: "Please cure this default within

10

ten (10) days of your receipt of this letter." ECF No. 12 at 71. It does not say: "You have ten (10) days from the date of this letter to cure this default." In any event, because the provision is ambiguous, how to interpret the provision will be a question of fact for the Court to decide at the bench trial. See ConocoPhillips, 299 P.3d at 849.

### IV. Conclusion

Therefore, it is **HEREBY ORDERED** that:

1. Plaintiffs' Motion for Summary Judgment, ECF Nos. 11, 12, is **DENIED**;

2. The Parties shall have **FOURTEEN DAYS** from the date of this Order to contact the chambers of United States Magistrate Judge Jerry H. Ritter to schedule a settlement conference; and

3. Pursuant to the Court's Standing Order Regarding Setting Civil Trials, in the event the settlement conference is unsuccessful the Parties shall file a joint motion requesting that the Court schedule trial and pretrial deadlines.

*[Signature: Margaret Strickland]*

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE